IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL AUTO PARTS, INC., | § | |
| | § | |
| | § | **COMPLAINT** |
| Plaintiff, | § | Civil Action No. _____ |
| v. | § | |
| | § | |
| AUTOMART NATIONWIDE, INC., | § | |
| MOHAMMAD ANJUM, CHENG | § | **JURY TRIAL DEMANDED** |
| ROGER LO, CHING GLORIA LIN, | § | |
| MARISOL LARA, AND LI-YUN | § | |
| IVORY KUO, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff National Auto Parts, Inc. ("Plaintiff" and/or "NAP") files its Complaint against Defendants Automart Nationwide, Inc., Mohammad Anjum, Cheng Roger Lo, Ching Gloria Lin, Marisol Lara, and Li-Yun Ivory Kuo (collectively referred to herein as "Defendants") and hereby alleges as follows:

### I.   SUMMARY

1.     This is an action for preliminary and permanent injunctive relief, damages and other relief arising out of Defendants' misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, violation of the Computer Fraud and Abuse Act, breach of fiduciary duty, defamation, conversion, tortious interference with prospective economic advantage and civil conspiracy.

1

2.      While employed at NAP, Cheng Roger Lo, Ching Gloria Lin, Li-Yun Ivory Kuo and Marisol Lara (collectively the "Lo Defendants") began a concerted effort to solicit employees, and to confiscate trade secrets and confidential information for the benefit of their current employer, Automart Nationwide, Inc., who is a direct competitor of NAP.

3.      Shortly before their resignation, the Lo Defendants hired an IT consultant to remove software and trade secret and confidential information from the computers of NAP, to change the passwords on the computers and ultimately to make it impossible to use the computers.

4.      As soon as the Lo Defendants began to work for Automart Nationwide, Inc., the Lo Defendants, Mohammad Anjum and Automart Nationwide, Inc. began an insidious campaign of stealing NAP customers, falsely stating NAP was out of business, closing and/or merging into Automart Nationwide, Inc., and soliciting current employees of NAP.

## II.      **PARTIES**

5.      NAP is a corporation organized under the State of Texas and registered to do business in the State of Illinois, with its principal place of business at 1720 E. State Highway 356, Irving, Texas 75060.

6.      Defendant Automart Nationwide, Inc.  ("Automart") is and was, at all times relevant herein, a corporation organized under the laws of the State of Illinois, with its principal place of business located at 1200 North Greenbriar Drive, Suite C, Addison, Illinois 60101.

7.      Defendant Mohammad Anjum ("Anjum") is an individual who resides at 112 Livery Circle, Oak Brook, Illinois 60523. Anjum is the sole shareholder and President of Automart.

8.      Defendant Cheng Roger Lo ("Lo") is an individual who resides at 2262 Scottdale Court, Wheaton, Illinois 60189. Lo was the General Manger at the NAP location in Addison, Illinois.

9.      Defendant Ching Gloria Lin ("Lin") is an individual who resides at 2262 Scottdale Court, Wheaton, Illinois 60189. Lin was the Purchasing Manager at the NAP location in Addison, Illinois.

10.     Defendant Li-Yun Ivory Kuo ("Kuo") is an individual residing at 122 Dickinson Drive, Wheaton, Illinois 60189. Kuo was the Accounting Manager at the NAP location in Addison, Illinois.

11.     Defendant Marisol Lara ("Lara") is an individual residing at 541 W. Linda Lane, Addison, Illinois 60101. Lara was a key salesperson at the NAP location in Addison, Illinois.

12.     On information and belief, NAP alleges that the Lo Defendants, Automart and Anjum acted as alleged in this Complaint jointly and for common purpose; that the acts alleged in this Complaint were in furtherance of a conspiracy among the Defendants; and that all actions were taken pursuant to common design to injure NAP. Defendants' actions resulted in the violations as set forth herein, from which NAP was damaged.

### III.    JURISDICTION AND VENUE

13.    Federal Question jurisdiction is invoked under 28 U.S.C. §1331 on the basis that NAP alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.* ("CFAA").

14.    Supplemental jurisdiction of this Court is invoked over all other claims that do not arise under federal statute, in that these claims are so related to the federal claim upon which this Court's original jurisdiction is based pursuant to 28 U.S.C. §1367.

15.    Diversity jurisdiction of this Court is also invoked under 28 U.S.C. §1332 as NAP is a corporation incorporated under the laws of the State of Texas with its principal place of business in Texas. Automart Nationwide, Inc. is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois. Mohammad Anjum is a citizen of the State of Illinois. Cheng Roger Lo is a citizen of the State of Illinois. Ching Gloria Lin is a citizen of the State of Illinois. Lin-Yun Ivory Kuo is a citizen of the State of Illinois. Marisol Lara is a citizen of the State of Illinois. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332. Complete diversity exists as the matter in controversy is between citizens of different states.

16.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

## IV.   FACTS

17.    NAP provides discount auto body collision parts in the Chicago, Illinois area (including, but not limited to Addison, Illinois) to retail repair shops and individuals, offering a wide selection of new aftermarket parts that includes replacements for automotive lighting, hoods, fenders, bumper covers, and other collision parts.

18.    NAP sells such auto body collision parts via drivers/salesmen, inside sales personnel, and by means of internet and telephone orders.

19.    NAP's owners, directors, officers and top management personnel are located in Irving, Texas.

20.    In conjunction with its operations in Addison, Illinois, NAP owns one management software program known as UQAuto software and also utilizes the software program Advanced Accounting ("ADV"). NAP used its UQAuto software to maintain, collect and store its trade secret and confidential information. The trade secret and confidential information on the UQAuto software included, but was not limited to:

    a.  Customer lists including, but not limited to, customer name, address and contact information;

    b.  Previous and current orders by each Customer;

    c.  Vendor contact information;

    d.  Vendor pricing information;

    e.  Pricing for the various auto body collision parts;

    f.  Costs of products;

    g.  Currently offered products; and

    h. Sales by month and year to date.

21. NAP maintains passwords on each and every computer and requires a password in order to log into the ADV and UQAuto software. Additionally, each employee has a specific clearance code and only certain employees, specifically managers, are able to access all levels of these software programs and information stored therein.

22. Automart is a direct competitor of NAP in the Addison, Illinois area as it sells aftermarket auto body collision parts to repair shops and individuals. Automart is located approximately four miles from NAP in Addison, Illinois.

23. Anjum is the sole shareholder, officer and director of Automart.

24. Lo was the General Manager of NAP from 2010 until August 25, 2014, when he resigned. In Lo's capacity of General Manager, he was responsible for overseeing and directing the daily operations at NAP. When Lo announced his upcoming resignation (giving two weeks notice), Lo stated he was resigning because he was "tired, and had certain aches and pains." Contrary to his representation, Lo resigned in order to become a key management employee at Automart. Lo is now a General Manager at Automart and oversees the daily operations of Automart.

25. Lin was the Purchasing Manager of NAP from 2010 until August 18, 2014 when she resigned without notice. In Lin's capacity of Purchasing Manager, she was responsible for purchasing inventory, maintaining an inventory of the items that were being bought and sold at NAP and maintaining the inventory records. Lin, wife of Lo, became a key management employee responsible for all inventory and logistical matters at Automart.

26.     Kuo was the Accounting Manager of NAP from 2010 until August 25, 2014, when she resigned. In Kuo's capacity of Accounting Manager, she was responsible for maintaining the accounting activities of NAP, managing the payroll, and human resource administration. In connection with her resignation, Kuo stated she "was going to go back home to Taiwan." Contrary to her representation, Kuo resigned in order to become a key administrative employee responsible for all accounting at Automart.

27.     Lara was a top salesperson at NAP from 2010 until August 23, 2014, when she resigned. In Lara's capacity as salesperson, she was responsible for making and receiving sales calls. As such, she had key knowledge and information about the customers of NAP. In lieu of a resignation, Lara began working for Automart while on vacation at NAP. Lara is now a sales manager at Automart and is involved in sales and administration at Automart.

28.     Without limitation, Lo, Lin, Kuo and Lara were the four key employees of NAP in Addison, Illinois, and as such, they were responsible for all of the sales, warehouse, delivery, personnel, accounting and administrative activities for this NAP location and had complete "bottom-line" responsibilities for the profit and losses of NAP in Addison, Illinois.

29.     Prior to their resignation, the Lo Defendants met on numerous occasions with Anjum and Automart personnel. On information and belief, NAP alleges that such meetings concerned the Lo Defendants' future employment at Automart and plans to undermine NAP.

30.     Upon learning of the resignations of the Lo Defendants, Steve Culver, Sr., Vice President of NAP, and Joseph Tsai, Vice President of NAP, traveled to NAP's business location in Addison, Illinois to oversee the transition of new personnel after the

7

departure of the Lo Defendants. To his dismay, Mr. Culver and Mr. Tsai found the NAP operations in complete disarray as the result of the concerted actions of the Lo Defendants. Particularly, Mr. Culver and Mr. Tsai found that the Lo Defendants had:

       a.     changed the company's password on each computer so that no one was able to access the computers or the ADV and UQAuto software on the computers;

       b.     removed and/ or destroyed the trade secret and confidential information contained on the company's UQAuto software;

       c.     removed the UQAuto software, with the assistance of an IT consultant, from each computer which impaired and limited NAP from conducting business;

       d.     removed and/or destroyed NAP's files including, but not limited to, personnel, vendor, customer and accounting files;

       e.     made a systematic and concerted effort of soliciting key employees of NAP for employment by Automart;

       f.     provided the trade secret and confidential information to Automart and Anjum.

31.     Near or at the same time of discovering the unsavory acts of the Lo Defendants, Mr. Culver and Mr. Tsai discovered that Anjum and Automart had:

       a.     induced the Lo Defendants to solicit the key employees of NAP, including, but not limited to, Jason Bixler, Oscar Hurtado, Wojciech Paciukanis and Andrzey Walkiewicz to accept employment with Automart;

       b.     started a campaign to solicit the customers of NAP to move their business to Automart;

8

c.      instructed the sales persons for Automart to make false and damaging statements about NAP to the customers of NAP, among which included false statements that "NAP was shutting down", that "NAP had transferred all of its business operations to Automart", and that "customers now needed to place orders for the autobody parts with Automart"; and

d.      installed the UQAuto software obtained from NAP onto the computers at Automart.

32.      On September 8, 2014, upon learning of Anjum, Automart and the Lo Defendants' conduct, NAP sent a cease and desist letter to Lo, Lin, Kuo and Anjum expressing that it believed they had inappropriately taken trade secret and confidential information and demanded that property of NAP be returned. True and correct copies of the September 8, 2014 letters are attached hereto as Exhibit 1.

33.      On September 17, 2014, NAP sent a cease and desist letter to Anjum and Automart putting both Anjum and Automart on notice that NAP believed the Lo Defendants had inappropriately taken confidential and trade secret information from NAP. A true and correct copy of the September 17, 2014 letter is attached hereto as Exhibit 2.

34.      On September 23, 2014, NAP sent a letter to Lara expressing that it believed that Lara had inappropriately taken confidential and trade secret information from NAP. A true and correct copy of the September 23, 2014 letter is attached hereto as Exhibit 3.

35. On October 3, 2014, NAP sent a follow up letter to the Defendants reasserting its belief that the Defendants had inappropriately taken confidential and trade secret information from NAP. True and correct copies of the October 3, 2014 letters are attached hereto as <u>Exhibit 4</u>.

36. As of the date of this filing, Lo, Lin, Kuo, Lara, Anjum, and Automart have not responded to the cease and desist letters sent by NAP.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Misappropriation of Trade Secrets in Violation of the Illinois Trade Secrets Act (765 ILCS 1065/1, *et seq.*) ("ITSA")**
**(Against All Defendants)**

37. NAP repeats and realleges the averments of paragraphs 1-36 as if fully set forth herein.

38. Over the course of several years, NAP has compiled and maintained a list of customers, including their name and contact information, as well as preceding orders on a computer system that was only accessible via a password that was issued by NAP. In addition, NAP maintained a list of vendor contact information, which included the vendor prices, on a computer system that was only accessible via a password that was issued by NAP. Furthermore, only certain employees were allowed clearance to the trade secret and confidential information, particularly, the Lo Defendants. In addition to information being accessible on the computer system, NAP kept a written record of customer files and invoices in a locked cabinet.

39.     On information and belief, NAP alleges that the Lo Defendants misappropriated NAP's trade secrets by downloading them, by improperly using and disclosing them, and by continuing to improperly use and disclose them, without NAP's consent and authorization.

40.     The Lo Defendants physically took personnel, customer, accounting and vendor files from NAP prior to their resignation.

41.     The Lo Defendants, as managers and key employees for NAP, breached their confidential relationship with NAP by acting in a manner inconsistent with NAP's interest. Specifically, the Lo Defendants had a duty to maintain the confidentiality of the customer and vendor lists and files and failed to abide by this duty by taking the customer and vendor lists and files upon their resignation.

42.     Anjum and Automart knew or should have known that the Lo Defendants acquired trade secrets from NAP.

43.     Based on information and belief, NAP alleges that the Lo Defendants, Anjum and Automart are using the customer lists and customer information to solicit business and damage the prospective business of NAP.

44.     By reason of this wrongful conduct, Defendants misappropriated NAP's trade secrets in violation of the ITSA.

45.     Furthermore, the Lo Defendants' continued employment by Automart constitutes a threatened misappropriation of trade secrets and/or confidential information.

46.     NAP has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial as

a result of Defendants' threatened or actual misappropriation of NAP's trade secrets and confidential information.

47.     On information and belief, NAP alleges that Defendants acted willfully and maliciously and thus NAP is entitled to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

48.     Defendants' misappropriation has caused NAP to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm and damages unless Defendants are enjoined from retaining and using such trade secrets and/or confidential information and from working for Automart.

<u>**SECOND CAUSE OF ACTION**</u>
**Computer Fraud and Abuse Act - Violation of 18 U.S.C. §1030, *et seq.***
**("CFAA")**
**(Against the Lo Defendants)**

49.     NAP restates and incorporates by reference all the previous allegations as if fully rewritten herein.

50.     All computers used by the Lo Defendants to access NAP's electronically stored information, and/or all computers used by the Lo Defendants to access, impair or destroy electronic information of NAP, were at all relevant times computers used in interstate commerce and are protected pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. §1030(e).

51.     Information stored on NAP's computers is protected via various security measures including passwords for each employee who is authorized to access the computer system and restricting access to information to only key employees in the company.

52.     The Lo Defendants accessed and removed the software and its data from the computers of NAP for the benefit of their current employer Automart and thus exceeded their authorization to use the computers as such actions are adverse to NAP.

53.     The Lo Defendants accessed the secure computers of NAP without authorization or exceeding their authorization and obtained information in violation of 18 U.S.C. §1030 (a)(2)(C).

54.     The Lo Defendants knowingly and with the intent to damage, accessed NAP's protected computers without authorization or exceeding NAP's authorized access in violation of 18 U.S.C. §1030 (a)(5).

55.     The Lo Defendants knowingly and with the intent to damage, intentionally deleted and destroyed information on the protected computers of NAP, and as a result, caused damage and loss to the protected computers of NAP in violation of 18 U.S.C. §1030(a), *et seq.*

56.     Due to the damage to the protected computers by the Lo Defendants, NAP incurred losses for addressing, responding and investigating the damage that was inflicted onto the computers. Such losses exceed $5,000 in a one-year period in violation of 18 U.S.C. §1030(g) and (c)(4)(A)(i)(I).

57.     The Lo Defendants' blatant violation of the CFAA has caused NAP to suffer and will cause it to continue to suffer, substantial, immediate and irreparable harm and damages unless the Defendants are enjoined from using any data including trade secrets and/or confidential information and from working for Automart.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against the Lo Defendants)

58.     NAP restates and incorporates by reference all the previous allegations as if fully rewritten herein.

59.     The Lo Defendants' actions alleged herein are violations of the common law of Illinois.

60.     An employee or agent owes a fiduciary duty of fidelity and loyalty to his employer which includes a prohibition against soliciting the employer's customers, enticing away the employer's employees or misappropriating the employer's personal property during the period of employment.

61.     As the General Manager, Lo was entrusted with protecting the best interests of NAP and NAP placed its trust and confidence in Lo. Lo owed fiduciary duties to NAP, including the duty of loyalty.

62.     As the Purchasing Manager, Lin owed fiduciary duties to NAP, including the duty of loyalty.

63.     As the Accounting Manager, Kuo owed fiduciary duties to NAP, including the duty of loyalty.

64.     As a top performing salesperson, Lara as an employee for NAP owed fiduciary duties to NAP, including the duty of loyalty.

65.     When the Lo Defendants accessed trade secrets and/or confidential information, they breached their fiduciary duties owed to NAP. Specifically, by accessing and removing customer and vendor information, personnel files and software from the computers and the office of NAP, the Lo Defendants intentionally breached their duty of loyalty which was owed to NAP and displayed an overt lack of good faith.

14

66.     Furthermore, when the Lo Defendants began an active and calculated campaign to solicit employees from NAP to work at Automart and divert business from NAP to Automart, the Lo Defendants breached their fiduciary duty.

67.     NAP has been injured by the Lo Defendants' breach of fiduciary duty in that NAP has lost customers, employees, customer information and necessary software to operate the business. Additionally, NAP was deprived of the honest services of its employees. As a result of the actions by the Defendants, NAP has lost business in an amount to be determined at trial.

68.     The Lo Defendants' breach of fiduciary duties has caused NAP to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm and damages unless the Lo Defendants are enjoined from retaining and using NAP's trade secrets and/or confidential information, soliciting employees and customers and from working for Automart.

## FOURTH CAUSE OF ACTION
### Defamation
### (Against All Defendants)

69.     NAP restates and incorporates by reference all the previous allegations as if fully written herein.

70.     Defendants' actions alleged herein are violations of the common law of Illinois.

71.     The Defendants have made numerous false and defamatory allegations to third parties, particularly the current customers of NAP, which has directly caused damage to NAP.

72.    Specifically, the Defendants have stated that NAP is "shutting down"; that "NAP has transferred all of its business operations to Automart", and that "customers now needed to place orders for the autobody parts with Automart".

73.    These false allegations have greatly injured the reputation and business of NAP.

74.    Defendants' defamatory allegations have caused NAP to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm unless Defendants are enjoined from making any false claim about NAP including, but not limited, that NAP is closing, NAP is merging and/or being bought by Automart, and that NAP customers should now buy products from Automart.

**FIFTH CAUSE OF ACTION**
**Conversion**
**(Against All Defendants)**

75.    NAP restates and incorporates by reference all the previous allegations as if fully written herein

76.    Defendants' actions alleged herein are violations of the common law of Illinois.

77.    NAP has an absolute and unconditional right to the personnel, customer, accounting and vendor files as the files were created, maintained and stored at NAP.

78.    Upon learning that the Lo Defendants confiscated the files and subsequently shared the files with Anjum and Automart, NAP sent a cease and desist letter to the Defendants specifically requesting that any personal property, including the files, be returned to NAP.

79.    Due to the loss of personnel, customer, accounting and vendor files, NAP has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Prospective Economic Advantage
### (Against All Defendants)

80.     NAP restates and incorporates by reference all the previous allegations as if fully rewritten herein.

81.     Defendants' actions alleged herein are violations of the common law of Illinois.

82.     Based on their previous sales history, NAP reasonably expected to continue to do business with Village Auto and other current customers.

83.     The Defendants had actual knowledge of this expectation based on their employment with NAP and by reason of the customer lists and customer files which were wrongfully obtained from NAP.

84.     Furthermore, the Defendants specifically and intentionally intended to interfere with the prospective business relationships of NAP as the Defendants instructed drivers and salesperson to inform NAP customers that NAP was closing and even went so far as to create flyers to distribute to customers stating these erroneous assertions. This deliberate disparagement was purposeful interference by the Defendants.

85.     NAP has been and will continue to be injured by the Defendants as it has lost business income in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Civil Conspiracy
### (Against All Defendants)

86.     NAP restates and incorporates by reference all the previous allegations as if fully rewritten herein.

87.     Defendants' actions alleged herein are violations of the common law of Illinois.

88.     On information and belief, Defendants entered into an agreement for the sole purposes of accessing, stealing and utilizing customer lists and customer information from NAP in order to benefit themselves individually and Anjum and Automart.

89.     By utilizing the customer lists and customer information that were wrongfully obtained by the Lo Defendants from NAP, Defendants began a deliberate campaign to steal and entice customers away from NAP. Defendants made fallacious and untruthful statements in an attempt to pilfer customers away from NAP.

90.     NAP has been and will continue to be injured by Defendants' civil conspiracy as NAP has lost a substantial amount of business as of the filing of this Complaint and will continue to lose business due to the improper actions by the Defendants.

91.     Defendants' civil conspiracy has caused NAP to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm unless Defendants are enjoined from disclosing and using NAP's trade secrets and/or confidential information, from working for Automart and from soliciting current employees at NAP.

## VI.    RELIEF REQUESTED

### DAMAGES

92.    NAP sues to recover the actual damages caused by the Defendants. These damages include lost profits, both prospective and retrospective, and the recovery of improper profits the Defendants obtained from their theft and misuse of the trade secrets and confidential information.

93.    NAP sues to recover exemplary/punitive damages as the Defendants' actions as described herein are willful and malicious. The Defendants had a calculated plan to steal trade secrets and confidential information in order to undermine the business of NAP.

94.    NAP sues to recover its attorneys' fees pursuant to Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

### INJUNCTION

95.    NAP seeks a preliminary and ultimately a permanent injunction against the Defendants as the Defendants have caused NAP to suffer, and will cause it to continue to suffer, substantial, immediate and irreparable harm as the Defendants are attempting to destroy NAP's business, using wrongfully obtained trade secret and confidential information, as well as soliciting employees and making defamatory statements concerning NAP.

96.    NAP does not have an adequate remedy at law for the injuries described above. The damages, specifically the loss of business due to the defamatory statements as well as the damages associated with the stealing of trade secret and confidential information, are difficult to measure.

97.    NAP is likely to succeed on the merits of its claims against the Defendants.

98.     Moreover, the harm that would occur to NAP if the preliminary injunction is not granted far outweighs any harm that may occur to the Defendants.

99.     Due to the nature of the actions committed by the Defendants, it would be in the best interest of the public to grant the preliminary and permanent injunction so as to deter other individuals from engaging in such egregious conduct.

## JURY DEMAND

NAP requests a Jury Trial in this case.

## PRAYER

WHEREFORE, Plaintiff respectfully requests the following relief:

A.      Enter judgment in favor of Plaintiff on all Causes of Action in the present Complaint;

B.      Award damages to Plaintiff, including exemplary/punitive damages, in an amount to be determined at trial;

C.      Award Plaintiff its costs, interest, and reasonable attorneys' fees; and

D.      Issue a preliminary injunction and ultimately a permanent injunction, as follows:

      i.   Defendants are prohibited from contacting the current and former customers of NAP;

      ii.  Defendants are prohibited from contacting and soliciting any current or former vendor of NAP;

      iii. Defendants are prohibited from contacting and attempting to solicit any current or former employee of NAP;

iv. Defendants are prohibited from using or disclosing any trade secret or confidential information or property of NAP including information taken without express authorization from NAP's premises, computer and computer systems such information includes any customer files, personnel files, vendor files, accounting records and any documents relating to the purchasing history of NAP;

v. The Lo Defendants are prohibited from continuing to work at Automart;

vi. Defendants are prohibited from making any false claim about NAP including, but not limited to, that NAP is closing, NAP is merging and/or being bought by Automart, and that NAP customers should now buy products from Automart.

E. Award Plaintiff such other relief as this Court deems just and proper.

Dated: October 17, 2014                    Respectfully submitted,

                                           NATIONAL AUTO PARTS, INC.


                                           /s/ Anne W. Mitchell
                                           **One of Its Attorneys**

                                           Anne W. Mitchell (6278050)
                                           ROONEY RIPPIE & RATNASWAMY LLP
                                           anne.mitchell@r3law.com
                                           350 West Hubbard Street, Suite 600
                                           Chicago, Illinois 60654
                                           312-447-2800

Robert F. Maris
State Bar No. 12986300
MARIS & LANIER, P.C.
rmaris@marislanier.com
3710 Rawlins Street, Suite 1550
Dallas, Texas 75219
214-706-0920 telephone
214-706-0921 facsimile
(*Pro hac vice* application pending)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL AUTO PARTS, INC., | § § § | |
| Plaintiff, | § § | **COMPLAINT** Civil Action No. _____ |
| v. | § § | |
| AUTOMART NATIONWIDE, INC., MOHAMMAD ANJUM, CHENG ROGER LO, CHING GLORIA LIN, MARISOL LARA, AND LI-YUN IVORY KUO, | § § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

## DISCLOSURE STATEMENT AND NOTIFICATION OF AFFILIATES

Pursuant to Fed. R. Civ. P. 7.1(a), Plaintiff National Auto Parts, Inc. states that it has no parent corporation and that no publicly held corporation owns more than 10% of its stock.  Pursuant to Local Rule 3.2 of the Northern District of Illinois, Plaintiff National Auto Parts, Inc. states that it has no publicly held affiliates.

Dated:  October 17, 2014

Respectfully submitted,

NATIONAL AUTO PARTS, INC.

/s/ Anne W. Mitchell
One of Its Attorneys

Anne W. Mitchell (6278050)
ROONEY RIPPIE & RATNASWAMY LLP
anne.mitchell@r3law.com
350 West Hubbard Street, Suite 600
Chicago, Illinois  60654
312-447-2800

23

## VERIFICATION

STATE OF TEXAS        §
                             §

COUNTY OF DALLAS     §

       Before me, the undersigned Notary Public, on this day personally appeared the person known to me to be Steve Culver, who, upon her oath, duly deposed and stated that he has read Plaintiff's Original Complaint and that the facts stated therein are within his personal knowledge and are true and correct.

                                  _____

                                  Steve Culver
                                  Sr. Vice President of NAP

       SIGNED AND SWORN TO BEFORE ME on the _16_ day of October, 2014, to certify which, witness my hand and official seal.

ARTURO HERNANDEZ
My Commission Expires
June 17, 2018

                                  Notary Public in and for the State
                                  of Texas