UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL AUTO PARTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 8160 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| AUTOMART NATIONWIDE, INC., | ) | |
| MOHAMMED ANJUM, CHENG | ) | |
| ROGER LO, CHING GLORIA LIN, | ) | |
| MARISOL LARA, and LI-YUN | ) | |
| IVORY KUO, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

After Plaintiff National Auto Parts' (NAP) former employees jumped ship to a direct competitor allegedly taking NAP's trade secrets, customers, and software with them, NAP brought this action for injunctive relief and damages against Defendants Automart Nationwide, Incorporated ("Automart") and Mohammed Anjum, as well as former employees Cheng Roger Lo, Ching Gloria Lin, Marisol Lara, and Li-Yun Ivory Kuo (the "Lo Defendants") (collectively "Defendants"), for conspiring to divert NAP's business to Automart. Specifically, NAP alleges that Defendants violated the Illinois Trade Secret Act ("ITSA"), 765 Ill. Comp. Stat. § 1065/1 *et seq*., and committed the following common law torts: defamation, conversion, tortious interference with prospective economic advantage, and civil conspiracy. NAP also alleges that the Lo Defendants violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*., and breached their fiduciary duties to NAP. Defendants move to dismiss each of NAP's claims, except for its ITSA claim, for failure to plead the stated cause of action. Defendants also move to dismiss NAP's breach of fiduciary duty, conversion, tortious interference, and civil

conspiracy claims as preempted by the ITSA. Because NAP adequately pleaded the stated causes of action and they are not preempted by the ITSA, Defendants' motion to dismiss [27] is denied.

## BACKGROUND[1]

NAP provides discount auto body collision parts to retail repair shops and individuals in the Chicagoland area. It has a location in Addison, Illinois, as well as other surrounding areas. NAP sells its auto body collision parts through drivers/salesmen, internal sales personnel, and over the internet and telephone. NAP's Addison location utilizes UQAuto, a proprietary computer program, to assist in the running of its business. This program stores NAP's trade secret and confidential information including customer contact information and order history, vendor contact and pricing information, product cost and pricing information, and NAP's sales history. The Addison location also utilizes a computer program called ADV. Both computer programs, along with NAP's computers, are password protected. Each employee is given a unique password that provides them with a particular level of access to the information stored within these programs.

Automart is a direct competitor of NAP. It is located approximately four miles from NAP in Addison, Illinois. Like NAP, Automart sells aftermarket auto body collision parts to repair shops and individuals. Defendant Anjum is the sole shareholder, officer, and director of Automart.

Defendant Lo was the General Manager of NAP's Addison location from 2010 until August 25, 2014, when he resigned. As General Manager, Lo was responsible for overseeing

---

[1] The facts in the background section are taken from NAP's First Amended Complaint ("Amended Complaint") and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

and directing the daily operations of NAP. In August of 2014, Lo announced that he was resigning because he was "tired, and had certain aches and pains." Doc. 26 ¶ 25. In truth, Lo left NAP to become General Manager at Automart.

Defendant Lin, who is married to Defendant Lo, was the purchasing manager at NAP from 2010 until August 18, 2014. Defendant Lo was responsible for purchasing inventory and maintaining inventory records. After resigning from NAP, Lin joined Automart where she manages its inventory and logistical matters.

Defendant Kuo was the accounting manager for NAP from 2010 until August 25, 2014. Kuo was responsible for maintaining NAP's accounting activities, managing the payroll, and human resource administration. In August of 2014, Kuo told NAP that she was resigning to return to Taiwan. Kuo now handles accounting for Automart.

Defendant Lara was NAP's top salesperson. As a result of her position, Lara had knowledge and information regarding NAP's customers. Lara worked for NAP from 2010 until August of 2014. While on leave from NAP, Lara began working for Automart as a sales manager. Lara never formally resigned from NAP.

Prior to resigning from NAP, the Lo Defendants met with Anjum on several occasions to discuss their future employment with Automart and ways to undermine NAP's business. In furtherance of this goal, and while still employed by NAP, the Lo Defendants changed NAP's computer passwords so that they could not be accessed, removed and destroyed trade secret and confidential information contained on the UQAuto software, removed the UQAuto software entirely from NAP's computers, removed or destroyed NAP's physical personnel, customer, and accounting files, and provided trade secret and confidential information to Anjum and Automart. For their part, Automart and Anjum solicited NAP customers, installed NAP's UQAuto software

3

on Automart's computers, and induced the Lo Defendants to entice NAP employees to join Automart. In addition, the Defendants made false and damaging statements about NAP to its customers. Specifically, Defendants told NAP customers that "NAP was shutting down," "NAP had transferred all of its business operations to Automart," and "customers now needed to place orders for the autobody parts with Automart." Doc. 26 ¶ 32(c).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendants move to dismiss each of NAP's claims, aside from its ITSA claim, on various grounds. Defendants move to dismiss NAP's breach of fiduciary duty, conversion, tortious interference with prospective economic advantage, and civil conspiracy claims arguing that these causes of action are preempted by the ITSA. Defendants also move to dismiss these causes of

4

action, along with NAP's CFAA and defamation claims, on the basis that NAP has failed to adequately plead the stated cause of action.

## I. Computer Fraud and Abuse Act Claim

Plaintiff's Amended Complaint alleges that the Lo Defendants violated three different provisions of the CFAA: (1) 18 U.S.C. § 1030(a)(2)(C), which prohibits people from "intentionally access[ing] a computer without authorization or exceed[ing] [their] authorized access and thereby obtain[ing] information from any protected computer"; (2) 18 U.S.C. § 1030(a)(5)(B), which prohibits people from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage"; and (3) 18 U.S.C. § 1030(a)(5)(C), which prohibits people from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." Defendants move to dismiss NAP's § 1030(a)(2)(C) claim on the basis that the Lo Defendants were authorized to access NAP's computers. Defendants move to dismiss NAP's § 1030(a)(5) claims arguing first that NAP has not adequately pleaded a particular subsection of this provision, and assuming NAP is referring to § 1030(a)(5)(A), it has not adequately pleaded a "transmission," a necessary element.[2]

Preliminarily, NAP's Amended Complaint clearly alleges violations of §§ 1030(a)(5)(B) and (C), not § 1030(a)(5)(A). Doc. 26 ¶ 53 ("The Lo Defendants intentionally accessed NAP's protected computers without authorization…in violation of 18 U.S.C. § 1030(a)(5)(B); § 1030(a)(5)(C)."). Neither subsection (B) nor (C) require a "transmission" to substantiate a claim. Defendants' basis for dismissing NAP's § 1030(a)(5) claims is thus inapplicable and Defendants' motion to dismiss these claims is denied.

---

[2] Defendants' reply brief makes several additional arguments in support of dismissal including that NAP failed to adequately allege damage or loss. Because these arguments were raised for the first time in Defendants' reply brief, they are waived. *Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004).

Defendants' argument that this Court should dismiss NAP's § 1030(a)(2)(C) claim because the Lo Defendants were authorized to access NAP's computers is also unavailing. NAP concedes that it gave the Lo Defendants access to its computers and the information stored therein. NAP argues, however, that the Lo Defendants' authority to access its computers terminated when the Lo Defendants violated their duty of loyalty to NAP by acquiring interests adverse to NAP. The Court agrees.

The Seventh Circuit has expressly held that once an employee engages in conduct that violates his duty of loyalty to his employer, the agency relationship (and associated rights as the employer's agent) is terminated. *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006). Because an employee's authority to access his employer's computer stems from the agency relationship, once that relationship ends, so does the employee's authority to access its employer's computers. *Id.* NAP's Amended Complaint alleges that the Lo Defendants acquired interests adverse to NAP while still in NAP's employ. If true, this violated the Lo Defendants duty of loyalty to NAP, thereby terminating their agency relationships, and with it, their authority to access NAP's computers. Because NAP alleges that the Lo Defendants continued to access its computers after they acquired interests adverse to NAP, it has alleged that the Lo Defendants accessed its computers without authority. Defendants do not argue to the contrary. Defendants' motion to dismiss this claim is denied.

## II. Defamation Claim[3]

"A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from

---

[3] Contrary to Defendants' assertion, defamation claims brought in federal court are not subject to Illinois' heightened pleading requirements. Rather, they are governed by federal notice-pleading rules. *Lumenate Tech. v. Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *9 (N.D. Ill. Nov. 11, 2013) (citing *Muzikowksi v. Paramount Pictures Corp.*, 322 F.3d 918, 925–26 (7th Cir. 2003)). NAP's defamation claim thus will be analyzed pursuant to Rule 8.

associating with him." *Chicago Conservation Ctr. v. Frey*, 40 Fed. App'x. 251, 254 (7th Cir. 2002) (citing *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214, 174 Ill. 2d 77, 220 Ill. Dec. 195 (1996)). To properly plead a defamation claim, a plaintiff must allege "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the statement to a third party, and that the publicized statement damaged the plaintiff." *Pompa v. Swanson*, 990 N.E.2d 314, 318–19, 2013 IL App (2d) 120911, 371 Ill. Dec. 414 (2013). Defendants move to dismiss NAP's defamation claim arguing that NAP failed to attribute a defamatory statement to a named Defendant, failed to plead the third party to which the statement was published, and failed to plead specific damages caused by the alleged defamatory statements.

The Court first disposes of Defendants' argument that NAP attributes all allegedly defamatory statements to unidentified sales persons, not to the named Defendants. NAP's Amended Complaint repeatedly alleges that Defendants made defamatory statements. *See* Doc. 26 ¶ 32(c) (Anjum and Automart "along with the Lo Defendants made and/or instructed the sales persons for Automart to make false and damaging statements about NAP to the customers of NAP"), ¶ 70 ("The Defendants have made numerous false and defamatory allegations to third parties"), ¶ 71 ("Specifically, the Defendants have stated that NAP is shutting down; that NAP has transferred all of its business operations to Automart, and that customers now needed to place orders for the autobody parts with Automart.") (internal quotation marks omitted). These allegations, viewed in a light most favorable to NAP, sufficiently attribute defamatory statements to the named Defendants.

The Court likewise rejects Defendants' argument that NAP failed to plead that the allegedly defamatory statements were published to a third party. "To prove publication, the

7

plaintiff must show that the defamatory statements were communicated to some person other than plaintiff." *Richardson v. Metro. Family Servs.*, No. 14-cv-1711, 2014 WL 7205581, at *8 (N.D. Ill. Dec. 18, 2014) (quoting *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1016 (N.D. Ill. 2012)) (internal quotation marks omitted). Paragraph 70 of NAP's Amended Complaint alleges that defamatory statements were made to NAP's customer Village Auto. Doc. 26 ¶ 70. This allegation is sufficient to satisfy the publication element.

Finally, the Court rejects Defendants' argument that NAP has failed to adequately allege a defamation claim because it has not alleged specific damages. There are two types of defamation claims: claims for defamation *per se* and claims for defamation *per quod*. *Richardson*, 2014 WL 7205581, at *6 (citing *Muzikowski*, 322 F.3d at 924). A plaintiff who pleads a claim for defamation *per quod* is required to allege "itemized losses and plead[] specific damages of actual financial injury." *Id.* (quoting *Muzikowski*, 322 F.3d at 927) (internal quotation marks omitted). A claim of defamation *per se*, on the other hand, involves statements that are so clearly injurious to the plaintiff's reputation, special damages need not be pleaded. *Chicago Conserv. Ctr.*, 40 Fed. App'x. at 255. Under Illinois law, there are five categories of statements that qualify as defamation *per se*. *Richardson*, 2014 WL 7205581, at *6 (*Muzikowski*, 322 F.3d at 924). One category is "words that prejudice a party in her trade, profession, or business." *Id.* The statements allegedly made by Defendants clearly fall into this category and are considered defamation *per se*. *See Equis Corp. v. The Staubach Co.*, No. 99 C 7046, 2000 WL 283982, at *3 (N.D. Ill. Mar. 13, 2000) ("[A]llegation[s] that an entity is going out of business, and will not be able to fill its orders" fall into this category and are considered defamation *per se*) (citing *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 (7th Cir. 1983)); *see also Richardson*, 2014 WL 7205581, at *7 (statements regarding job

8

performance, such as accusing a defendant of lacking ability in their trade, are defamation *per se*). NAP is not required, therefore, to plead special damages. Defendants' motion to dismiss NAP's defamation claim is denied.

## III. Preemption under the ITSA

Defendants move to dismiss NAP's breach of fiduciary duty, conversion, tortious interference with prospective economic advantage, and civil conspiracy claims on two bases, the first being that these causes of action are preempted by the ITSA. The ITSA "abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself." *Hecny Transp. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005) (citing 765 Ill. Comp. Stat. § 1065/8(a)). Where a claim is predicated on the misuse of confidential or secret information, that claim is preempted by the ITSA. *Automed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001). Where a claim would survive regardless of whether the information at issue was non-confidential, however, that claim is not preempted. *RTC Indus., Inc. v. Haddon*, No. 06 C 5734, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007). In other words, "when considering whether the ITSA preempts a separate claim, a court must determine whether that separate claim seek[s] recovery for wrongs beyond the mere misappropriation." *Lumenate*, 2013 WL 5974731, at *7 (quoting *Charles Schwab & Co., Inc. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *4 (N.D. Ill. 2005)) (internal quotation marks omitted).

### A. Breach of Fiduciary Duty Claim

NAP alleges that the Lo Defendants breached their fiduciary duty to NAP when, while still employed by NAP, they attempted to divert NAP customers to Automart, solicited NAP employees to work for Automart, and assessed and damaged NAP computers. Defendants move

9

to dismiss NAP's breach of fiduciary claim as preempted arguing that the conduct giving rise to the claim is the same conduct underlying the ITSA claim. Alternatively, Defendants argue that NAP's fiduciary claim fails because it is based on conduct that occurred after the Lo Defendants had resigned, when they no longer owed a duty of loyalty to NAP.

The Court addresses Defendants' latter argument first. NAP's Amended Complaint clearly alleges that the Lo Defendants engaged in the conduct giving rise to its breach of fiduciary claim prior to their resignations from NAP. Doc. 26 ¶ 31 ("prior to their resignations the Lo Defendants…changed the company's passwords on each computer…removed and/or destroyed the trade secret and confidential information contained on the company's UQAuto software…removed the UQAuto software, with the assistance of an IT consultant, for [NAP] computer[s]…solicit[ed] key employees of NAP for employment by Automart"), ¶ 64 ("Prior to their resignations from NAP, [] the Lo Defendants began an active and calculated campaign to…divert business from NAP to Automart"). The Lo Defendants therefore still owed a duty of loyalty to NAP when the alleged conduct occurred, thus the Court denies Defendants' motion to dismiss NAP's breach of fiduciary duty claim on this ground.

Turning to Defendants' preemption argument, as explained above, the relevant inquiry when determining whether a claim is preempted by the ITSA is whether the claim seeks "recovery for wrongs beyond the mere misappropriation" of confidential or trade secret information. *Lumenate*, 2013 WL 5974731, at *7. Claims that do not rest "on [] conduct that is said to misappropriate trade secrets" are not preempted. *Hecny*, 430 F.3d at 404–05. The portion of NAP's breach of fiduciary duty claim that is based on the Lo Defendants soliciting NAP employees to join Automart is not preempted by the ITSA. Neither Party alleges that the Lo Defendants utilized confidential or trade secret information when soliciting NAP employees.

10

This claim is thus independent of the misappropriation of trade secrets and is not preempted. *See Automed*, 160 F. Supp. 2d at 922 ("Soliciting employees…is independent of any trade secrets involved, and so is not preempted by ITSA."); *see also Dick Corp. v. SNC-Lavalin Constr. Inc.*, No. 04 C 1043, 2004 WL 2967556, at *11 (N.D. Ill. Nov. 24, 2004) ("Solicitation of employees is independent of the misuse of trade secrets, and a claim premised upon such an allegation is not preempted by the ITSA.").

The portion of NAP's breach of fiduciary duty claim that is based on the Lo Defendants diverting business away from NAP is also not preempted by the ITSA. This is so because the conduct underlying this claim is not the misappropriation of trade secrets or confidential information, but rather, the act of competing with NAP while the Lo Defendants still owed a duty of loyalty to it. *See Hecny*, 430 F.3d at 405 ("An assertion of trade secret in a customer list does not wipe out claims of…breach of the duty of loyalty that would be sound even if the customer list were a public record."). As such, it does not matter whether the Lo Defendants utilized confidential or trade secret information in furtherance of diverting business from NAP because NAP's breach of fiduciary duty claim "seek[s] recovery for wrongs beyond the mere misappropriation." *Lumenate*, 2013 WL 5974731, at *7. Put another way, NAP's breach of fiduciary claim remains even if it is ultimately determined that the customer information is not a trade secret or confidential information. NAP's claim is independent of the alleged misappropriation of trade secret or confidential information, and therefore is not preempted by the ITSA.

Finally, NAP's breach of fiduciary duty claim stemming from the Lo Defendants assessing and damaging NAP's computers is not preempted by the ITSA. The ITSA defines "misappropriation" as the "(1) acquisition of a trade secret…; or (2) disclosure or use of a trade

11

secret." 765 Ill. Comp. Stat. § 1065(2)(b). The conduct described in NAP's Amended Complaint with regard to this claim does not meet either definition of misappropriation. First, it is not clear to the Court what "assessing a computer" means, but neither Party has argued that this conduct involves the misappropriation of anything. Moving on to NAP's allegation that the Lo Defendants damaged its computers, this conduct also does not involve the misappropriation of trade secret or confidential information. NAP does not allege that the Lo Defendants took, shared or used the information contained on the computers. It simply alleges that the Defendants damaged NAP's computers. This claim thus seeks recovery for wrongs that are independent of trade secret or confidential information and is therefore not preempted by the ITSA. For these reasons, the Court denies Defendants' motion to dismiss NAP's breach of fiduciary claim.

### B. Conversion Claim

NAP alleges that the Lo Defendants, without authorization, took possession of NAP's tangible property, specifically NAP's personnel and accounting files, and shared that property with Defendants Anjum and Automart. Defendants move to dismiss NAP's conversion claim on the basis that conversion claims for intangible property are preempted by the ITSA. In addition, Defendants argue that the ITSA preempts conversion claims for tangible property that is alleged to contain confidential or trade secret information because the harm is not the conversion of the tangible files, but of the information contained therein. Alternatively, Defendants argue that NAP has not sufficiently pleaded that Defendants Anjum or Automart assumed control "over the software and/or information." Doc. 22 at 10.[4]

---

[4] Defendants also move to dismiss NAP's conversion claim arguing that it has not pleaded whether the alleged conversion was of tangible or intangible property. The Court summarily rejects this argument as NAP's Amended Complaint clearly alleges conversion of "NAP's tangible personal property." Doc. 26 ¶ 77.

NAP does not dispute that conversion claims for intangible property are preempted by the ITSA. Rather, NAP argues that the ITSA does not preempt its conversion claim because it has alleged the conversion of its tangible property, namely its personnel and accounting files that were maintained in physical form in NAP's office. Doc. 26 ¶¶ 76–78. Defendants respond that, despite NAP's arguments to the contrary, NAP's conversion claim is actually aimed at Defendants' alleged conversion of the information contained within the files. But the Court takes NAP's allegations at face value and declines to read a claim into NAP's Amended Complaint that NAP has not pleaded. The Court reads NAP's Amended Complaint as alleging a conversion claim only as to its tangible property, namely its physical accounting and personnel files. S*ee* Doc. 26 ¶¶ 76–79. Because the claim is only for the physical documents, the ITSA does not preempt it. *See Rubloff Dev. Grp., Inc. v. Supervalu, Inc.*, 863 F. Supp. 2d 732, 751 (N.D. Ill. 2012) (allowing a conversion claim for physical documents regardless of whether the documents possess proprietary information). This is so because the claim is essentially one for theft of personal property, and is not dependent on whether the information contained within the files is a trade secret or confidential information. *See Hecny,* 430 F.3d at 405 ("An assertion of trade secret in a customer list does not wipe out claims of theft"). The Court denies Defendants' motion to dismiss NAP's conversion claim as preempted by the ITSA.

Turning to Defendants' alternative argument that NAP has failed to adequately allege that Defendants Anjum or Automart assumed control, dominion or ownership of NAP's property, the Court disagrees. The Court finds that at this stage, NAP has sufficiently alleged that Defendants Anjum and Automart wrongfully assumed control of NAP's property. *See* Doc. 26 ¶ 78 ("the Lo Defendants confiscated the files and subsequently shared the files with Anjum and Automart").

Defendants do not offer argument or case law requiring the Court to find otherwise. The Court denies Defendants' motion to dismiss NAP's conversion claim on this alternative basis as well.

### C. Tortious Interference with Prospective Economic Advantage

NAP alleges that Defendants purposefully interfered with its prospective business relationships by defaming NAP to its customers. Defendants argue that the ITSA preempts NAP's tortious interference claim because the claim is based upon Defendants' alleged misappropriation of NAP's customer information. Again, the Court disagrees. Like NAP's other tort claims, this claim "seek[s] recovery for wrongs beyond the mere misappropriation" of trade secret or confidential information. *Lumenate*, 2013 WL 5974731, at *7. It seeks recovery for the alleged damage Defendants caused by defaming NAP to its customers, thereby interfering with NAP's prospective business opportunities. As such, this claim would remain even if it is determined that NAP's customer information is not confidential. *See Hecny,* 430 F.3d at 405; *see also Arvegenix, LLC v. Seth*, No. 13-cv-1253, 2014 WL 1698374, at *7 (C.D. Ill. Apr. 29, 2014) (tortious interference claim not preempted by ITSA where it is not premised on secret information and would be viable even if the information defendants used was public). Because NAP's tortious interference claim is independent of the misappropriation of trade secret or confidential information, the ITSA does not preempt it.

Defendants also argue that NAP has failed to adequately plead the stated cause of action because it has not properly pleaded an expectation of entering into a valid business relationship. Specifically, Defendants argue that NAP has not alleged any facts regarding its customer, Village Auto, and the business NAP anticipated receiving from it. To sufficiently allege a tortious interference claim, a plaintiff must plead "his reasonable expectation of entering into a valid business relationship," along with other elements not relevant to resolving Defendants'

14

motion. *Ammons v. Dart*, No. 13 C 8817, 2015 WL 1740086, at *4 (N.D. Ill. Apr. 13, 2015) (quoting *Fellaheur v. City of Geneva*, 568 N.E.2d 870, 878 (1st Dist. 2005)) (internal quotation marks omitted). To sufficiently plead this element, a plaintiff must identify a specific third party with whom he expected to enter into a business relationship. *Id*. (citing *Ali v. Shaw*, 481 F.3d 942, 945–46 (7th Cir. 2007)). NAP alleges that it had a history of doing business with Village Auto, Village Auto was a current customer, and that based on this, it reasonably expected to continue to do business with Village Auto. Doc. 26 ¶ 82. The Court finds these allegations sufficient to satisfy the reasonable expectation of entering into a valid business relationship element. *Cf. Frain Grp., Inc. v. Steve's Frozen Chillers*, No. 14 C 7097, 2015 WL 1186131, at *4 (N.D. Ill. Mar. 10, 2015) (dismissing tortious interference claim where plaintiff failed to identify current or prospective customers, or offer any other allegations supporting his reasonable expectation of new business). Defendants do not offer any case law requiring the Court to find otherwise. The Court denies Defendants' motion to dismiss NAP's tortious interference claim.

### D. Civil Conspiracy

Finally, Defendants argue that NAP's civil conspiracy claim is preempted by NAP's ITSA claim because the conduct giving rise to the conspiracy claim is the same conduct underlying its ITSA claim. But NAP's civil conspiracy claim is based, at least in part, on the conduct underlying its claims for defamation and violations of the CFAA. *See* Doc. 26 ¶¶ 89–90. The ITSA does not preempt these causes of action. Therefore, to the extent NAP's civil conspiracy claim is based on the conduct giving rise to the defamation and violations of the CFAA claims, the ITSA does not preempt the civil conspiracy claim.

As to NAP's other non-ITSA claims, where a civil conspiracy claim involves conduct that falls outside the confines of an ITSA cause of action, the civil conspiracy claim is not preempted. *Stereo Optical Co., Inc. v. Judy*, No. 08 C 2512, 2008 WL 4185689, at *5 (N.D. Ill. Sept. 8, 2008). Because the Court has found that NAP's non-ITSA causes of action are not preempted by the ITSA, the Court likewise finds that NAP's civil conspiracy claim based on the conduct alleged in those claims is not preempted by the ITSA.

Without citing any supporting case law, Defendants also move to dismiss NAP's civil conspiracy claim on the basis that NAP has failed to sufficiently define the agreement between the Defendants. To state a claim for civil conspiracy under Illinois law, a plaintiff must plead: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that cause an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258, 188 Ill. 2d 102, 241 Ill. Dec. 787 (1999)). NAP's Amended Complaint clearly alleges that "Defendants entered into an agreement for the sole purpose of dismantling the business of NAP." Doc. 26 ¶ 88. NAP's Amended Complaint further alleges that the Defendants met on several occasions to discuss the ways in which they would undermine NAP's business. *Id.* ¶ 30. Viewing these allegations in the light most favorable to NAP, the Court finds that they sufficiently define the agreement between Defendants. *See Borsellino*, 477 F.3d at 509. The Court denies Defendants' motion to dismiss NAP's civil conspiracy claim.

## CONCLUSION

For the above stated reasons, Defendants' motion to dismiss [27] is denied. Defendants have until October 16, 2015 to answer NAP's Amended Complaint.

Dated: September 24, 2015

SARA L. ELLIS
United States District Judge